UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES RICONDA, | |
| Plaintiff, | Civ. No. 19-1111 (KM) |
| v. | OPINION |
| US FOODS, INC., et al., | |
| Defendants. | |

### KEVIN MCNULTY, U.S.D.J.:

This is a state-court case, removed on the basis of the court's diversity jurisdiction. The plaintiff has moved to remand it to state court, asserting that defendant's notice of removal is untimely. For the reasons stated herein, the motion to remand is denied.

There is a recurring issue in this Court with respect to the $75,000 jurisdictional amount-in-controversy requirement, see 28 U.S.C. § 1332(a), in cases removed from the New Jersey state courts. That issue stems from a the rule of New Jersey civil practice that a complaint for unliquidated damages shall not state a dollar amount of the damages sought. See N.J. Ct. R. 4:5-2. The Jurisdiction and Venue Clarification Act of 2011 provided some much-needed clarity as to the removability of such cases. See 28 U.S.C. § 1332(c)(2)(A)(ii). The lack of a damages figure in the complaint, however, may continue to inject uncertainty as to the running of the 30-day *deadline* to remove. In such cases, the better practice in New Jersey may be to immediately serve a request for a statement of damages, see N.J. Ct. R. 4:5-2, and thereby avoid unnecessary motion practice.

## I. BACKGROUND

The plaintiff, James Riconda, was formerly employed by defendant US Foods, Inc. The complaint alleges that Mr. Riconda left work and went to the emergency room with flu-like symptoms in the early morning hours of July 6, 2017. The hospital sent him home, and on July 9, 2017, he was back at work. Later in July 2017, he was fired. The firing, he claims, was discriminatory.

On June 20, 2018, Mr. Riconda filed a complaint in the Superior Court of New Jersey, Middlesex County, Law Division. His complaint asserted four state-law causes of action, plus a federal-law claim under the Family Medical Leave Act ("FMLA").[1] Within 30 days of service, on July 31, 2018, the defendant timely removed the case to federal court.[2] That notice of removal was based on the presence of a federal question, *i.e.*, the FMLA claim, but did not address any alternative theory of removal based on diversity jurisdiction.[3] Within a few weeks, the defendant moved to dismiss on the basis (*inter alia*) that the complaint failed to state a federal claim under the FMLA. On December 20,

---

[1] The counts of the complaint are as follows:

    Count 1  Disability discrimination (New Jersey Law Against Discrimination ("NJLAD")

    Count 2  Perception-of-disability discrimination (NJLAD)

    Count 3  Failure to accommodate (unspecified)

    Count 4  Interference with rights under the federal FMLA

    Count 5  Request for equitable relief (citing "New Jersey law")

In addition to US Foods, Inc., the caption names John Doe defendants. These seem to be *pro forma* allegations, as the John Does are not otherwise described.

[2] (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

[3] *See* 28 U.S.C. § 1441(a) (providing for removal of state-court case over which federal district court would have original jurisdiction); 28 U.S.C. § 1331 (original federal-question jurisdiction of district courts).

2

2018, I granted the defendant's motion to dismiss, declined to exercise supplemental jurisdiction over the state-law claims, and remanded the matter (now a pure state-law case) to state court. *See Riconda v. U.S. Foods,* Civ. No. 18-12238, 2018 U.S. Dist. LEXIS 216231 (D.N.J. Dec. 20, 2018).

On January 25, 2019, the defendant filed a second Notice of Removal to this Court. (DE 1) This second Notice of Removal was assigned the new civil number in the caption above, but it relates to the same state-court complaint. This time, the defendant bases its notice of removal on this Court's diversity jurisdiction, which requires that the parties be citizens of separate states and that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332(a).[4]

The second Notice of Removal states that James Riconda is a citizen of the State of New Jersey. It states that the defendant, US Foods, Inc., is a citizen of the State of Delaware. At any rate, US Foods is not a citizen of the State of New Jersey; it is incorporated under the laws of Delaware and has its principal place of business in the State of Illinois.[5]

That leaves the $75,000 amount-in-controversy requirement. This state-court complaint, as per New Jersey civil practice, does not specify the dollar amount of damages sought. *See* N.J. Ct. R. 4:5-2 ("If unliquidated money

---

[4] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

  (1) citizens of different States . . . .

28 U.S.C. § 1332(a). *See also McCann v. Newman Irrevocable Trust,* 458 F.3d 281, 286 (3d Cir. 2006) ("Federal district courts are vested with original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between 'citizens of different States.' 28 U.S.C. § 1332(a)(1).")

The introductory paragraph of the notice of removal cites 28 U.S.C. § 1331, but the body of the notice cites 28 U.S.C. § 1332(a), and that is obviously what was intended.

[5] The citizenship of an individual equates to that person's domicile. *Krasnov v. Dinan,* 465 F.2d 1298 (3d Cir. 1972). "(c) For purposes of this section and section 1441 of this title — (1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business ...." 28 U.S.C. § 1332(c)(1).

3

damages are claimed in any court ... the pleading shall demand damages generally without specifying the amount."). Instead, the *ad damnum* language of the complaint describes the damages sought only by category: (1) compensatory damages, (2) punitive damages, (3) front and back pay, (4) equitable reinstatement, and (5) attorneys' fees.

The second Notice of Removal states that the defendant requested a statement of the damages sought under N.J. Ct. R. 4:5-2.[6] On January 7, 2019, the plaintiff responded with a Statement of Damages and settlement demand in excess of the jurisdictional amount of $75,000. (DE 8-1.)

That Statement calculates lost wages of $35,000 (using the plaintiff's salary of $1350 per week) for the five or six months that the plaintiff remained unemployed. (Net of wages for substitute employment obtained in December 2017, the Statement calculates lost wages currently in excess of $50,000, and "ongoing.") It alludes to emotional distress and similar damages arising from the plaintiff's unemployment and other factors, such as an enforced separation from his spouse. It cites allegedly comparable recent New Jersey cases upholding jury awards of emotional distress damages that ranged from $250,000 to $800,000. The Statement also points generally to the complaint's demand for punitive damages, alludes to the culpable participation of upper management in the firing, and states that punitive damages would likely not be covered by insurance.

## II. ISSUE PRESENTED

The facts alleged in the second Notice of Removal seem to be largely undisputed. The plaintiff does not claim that diversity jurisdiction is lacking. Rather, he moves to remand the case because the second Notice of Removal was filed untimely under 28 U.S.C. § 1446(b)(1).

---

6     .... Upon service of a written request by another party, the party filing the pleading shall within 5 days after service thereof furnish the requesting party with a written statement of the amount of damages claimed, which statement shall not be filed except on court order.

N.J. Ct. R. 4:5-2.

4

The second Notice of Removal was not, of course, filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." *Id.* Service of the complaint occurred on July 2, 2018, and the second Notice of Removal was filed on January 25, 2019.

The defendant contends, however, that this second Notice of Removal was filed "within 30 days after receipt by Defendants ... of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).[7]

Defendant claims that it could not have known that the complaint sought damages in excess of $75,000. It first learned of that fact, it says, on January 7, 2019, when the plaintiff, in response to the defendant's Rule 4:5-2 request, furnished a Statement of Damages in excess of $75,000. This Statement of Damages, in the defendant's view, was "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," which started the running of the 30-day deadline to remove. 28 U.S.C. § 1446(b).

The plaintiff demurs, arguing that the Statement of Damages was not required in order for the defendant to have ascertained that the complaint demanded damages in excess of $75,000. Rather, says the plaintiff, the

---

[7]     (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). Interestingly, the original complaint here was not one that was literally "not removable"; it *was* removable on the basis of the presence of a federal question, although I later remanded on discretionary grounds. I interpret the statute to cover a case in which a second jurisdictional basis for removal was not apparent, but later became so.

5

complaint itself adequately informed the defendant that the amount in controversy exceeded $75,000.[8]

If it was only the Statement of Damages that first placed the defendant on sufficient notice that the amount in controversy exceeded $75,000, then the deadline did not begin running until the Statement was served on January 7, 2019. The filing of the second Notice of Removal on January 25, 2019, then, would have been timely. *See* 28 U.S.C. § 1446(b)(1) (quoted at n.2, *supra*). Because the plaintiff claims that the complaint itself notified the defendant of the jurisdictional amount, the question may be framed more helpfully in this way: Did the complaint give the defendant a sufficient basis to believe that more than $75,000 was in controversy, and thereby trigger the running of the 30-day deadline to remove the case on diversity grounds?

### III. DISCUSSION

It is well-settled that the removal statutes, and 28 U.S.C. § 1441 in particular, are strictly construed against removal:

> As [28 U.S.C.] § 1441(a)'s language indicates, removal under that section is proper only if the federal district court would have had original jurisdiction if the case was filed in federal court. This jurisdictional prerequisite to removal is an absolute, non-waivable requirement. *See Allbritton Communications Co. v. NLRB*, 766 F.2d 812, 820 (3d Cir. 1985), *cert. denied*, 474 U.S. 1081, 106 S. Ct. 850, 88 L. Ed. 2d 891 (1986). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985) (citations omitted). If there is any doubt as to the propriety of removal, that case should not be removed to federal court. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990),

---

[8] Compared to the typical jurisdictional motion, then, the positions of the parties here are reversed. The plaintiff (although he wishes to stay out of federal court) is claiming that the complaint sought *more* than the jurisdictional amount; the defendant (who wishes to be in federal court) is claiming that, at least at the time of filing, the complaint sought *less*, or that the amount could not be determined. A certain amount of gamesmanship, then, is going on.

6

*cert. denied*, 498 U.S. 1085, 111 S. Ct. 959, 112 L. Ed. 2d 1046 (1991); *Abels*, 770 F.2d at 29.

*Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996). *See also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). When the plaintiff has moved to remand, the burden of establishing the propriety of removal and the existence of federal jurisdiction falls upon the removing party. *Boyer*, 913 F.2d at 111; *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

At issue here is the $75,000 amount-in-controversy requirement of diversity jurisdiction. The showing required to invoke the court's jurisdiction has not traditionally been a particularly high one. Where it appears that the plaintiff is demanding in excess of $75,000, that will be treated as the amount in controversy, unless it "appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Frederico*, 507 F.3d at 197 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)); *Kabana v. C.A.R.S. Prot. Plus, Inc.*, No. CV 15-7177 (SRC), 2015 WL 9308256, at *1–2 (D.N.J. Dec. 22, 2015). The amount in controversy may include not only claims for compensatory damages, but also non-frivolous claims for attorney's fees and punitive damages.[9]

The question here, however, is not removability or the existence of federal jurisdiction *per se*; it involves the *timeliness* of the Notice. Those issues are related, but distinct. Whether or not the complaint contains a damages figure, a defendant always *may* file a notice of removal containing a good faith assertion that the amount in controversy exceeds $75,000, and may persuade

---

[9] *See Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) (jurisdictional amount includes claim for unspecified amount of punitive damages, as long as the claim is not "patently frivolous and without foundation" in the sense that punitive damages would be unavailable as a matter of state substantive law. ); *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("Moreover, in calculating the amount in controversy, we must consider potential attorneys' fees."); *Zanger v. Bank of Am., N.A.*, Civ. No. 0-2480, 2010 WL 3910142, at *1 (D.N.J. Oct. 1, 2010) (Kugler, J.) (denying motion to remand where complaint sought $16,000 in compensatory damages, but also made a nonfrivolous claims for an unspecified amount of punitive damages).

7

the court by a preponderance of the evidence that this is so.[10] The question here, however, is one of timing: What quantum of information about the amount in controversy must the defendant possess in order to start the running of the 30-day period beyond which the defendant *may not* file a notice of removal, even if federal jurisdiction is present? In short, to say that a timely-removed case could survive a motion to remand is different from saying that the defendant's right to file a notice of removal began to waste at the uncertain point when the defendant could infer that the plaintiff was seeking at least $75,000.

"New Jersey District Court judges have applied two approaches in resolving matters such as the present one." *Worldwide Exec. Job Search Sols., LLC v. N. Bridge Grp.*, No. 17-cv-1907-PGS, 2017 WL 5762392, at *2 (D.N.J. Nov. 27, 2017). We may call these the "bright-line" approach and the "subjective-inquiry" approach.

Under the first, bright-line approach, "if a Complaint does not plead specific damages, and does not otherwise make clear that the amount in controversy exceeds $75,000, the 30-day clock for removal does not begin to run until the defendant receives a document that clearly states the amount in controversy is more than $75,000." *Worldwide Exec. Job Search Sols.*, 2017 WL 5762392 at *2 (citing *Vartanian v. Terzian*, 960 F. Supp. 58, 61-62 (D.N.J. 1999)). In such a case, "the relevant test is not what the defendants purportedly knew [with respect to the amount in controversy], but what [the pleadings or other documents] said.'" *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 968 F.2d 48, 54 (3d Cir. 1993), *overruled on other grounds, Sikrica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005). As the Third Circuit has

---

10     *See* 28 U.S.C. § 1332(c)(2)(A)(ii). That partial statutory fix for the problem of a complaint that does not specify an amount of damages was enacted by the Jurisdiction and Venue Clarification Act ("JVCA"), which was signed into law in 2011. JVCA § 103, Pub. L. No. 112-63 (Dec. 7, 2011). The 30-day deadline, however, serves separate purposes, and its expiration may bar removal even if a case is otherwise removable.

8

recognized, a majority of the Circuits have adopted some version of that bright-line rule:

> [T]he 30-day removal clock does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present. Every circuit that has addressed the question of removal timing has applied § 1446(b) literally and adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper and, with respect to the jurisdictional amount in particular, requires a *specific, unequivocal statement from the plaintiff regarding the damages sought.*

*Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 509 n.13 (3d Cir. 2014) (emphasis added) (quoting *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013) (citing cases from Second, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits)); *see also Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 78 (1st Cir. 2014) (holding that email correspondence from plaintiff to defendant, based on discovery produced by defendant, was "other paper" that provided basis for removal). That bright-line rule, however, has not been explicitly adopted by the Third Circuit, which has left the question open. *See Judon*, 773 F.3d at 509 n.13 ("We are not squarely presented with this question. . . . Resolution of this question must await an appropriate case.").

Judge Rodriguez of this Court has recognized the quandary created by the bright-line rule in a jurisdiction such as New Jersey. He would place the burden of resolving that quandary on the plaintiff:

> The Third Circuit's requirement that the initial pleading inform the defendant to a "substantial degree of specificity" that the basis for federal jurisdiction exists such that removal would be proper is at odds with the New Jersey Court Rule's requirement that pleadings not specify a dollar amount for unliquidated damages. To resolve this tension, we interpret the Third Circuit's "substantial degree of specificity" requirement to mean that the thirty-day removal period does not run from the defendant's receipt of the initial pleading unless the plaintiff has specifically alleged in the initial pleading that the damages sought are in excess of the minimum federal jurisdictional amount. In other words, we hold that, where the

9

plaintiff does not or cannot plead damages in a specific dollar amount but wishes the thirty-day period to run from the defendant's receipt of the initial pleading, the plaintiff must place in the initial pleading a specific allegation that damages exceed the minimum federal jurisdictional amount.[11]

*Vartanian*, 960 F. Supp. at 61-62. By making such an allegation, the plaintiff may put the ball in the defendant's court; without it, however, the deadline may not start running until some clearer statement of damages is furnished.[12]

Under the second, subjective-inquiry approach, the court will consider whether, although the complaint does not quantify damages, the defendant "can reasonably and intelligently conclude from the pleadings that the amount in controversy exceeds the jurisdictional minimum." *Carroll v. United Airlines, Inc.*, 7 F. Supp. 2d 516, 521 (D.N.J. 1998). The point at which such a reasonable belief ripens, however—*i.e.*, the beginning of the period beyond which the defendant *cannot* file a valid notice of removal—may be difficult to fix with precision. But where *Vartanian* would place the burden of uncertainty on the plaintiff, *Carroll* would place it on the defendant. *Id.* at 521 ("Stated differently, the burden of proof is on [the] defendant to assess and ascertain the amount in controversy within the 30–day time limit for removal provided in

---

[11] Such an allegation, I take it, would satisfy the *Worldwide* requirement of a complaint that "otherwise make[s] clear" that the amount-in-controversy requirement is met. *Worldwide Exec. Job Search Sols.*, 2017 WL 5762392 at *2 (citing *Vartanian*).

[12] *Vartanian* cited other cases that arguably endorse or follow the bright-line approach, including of *Rowe v. Marder*, 750 F. Supp. 718 (W.D. Pa. 1990), *aff'd*, 935 F.2d 1282 (3d Cir.1991) (although complaint asserted claim for emotional distress that cause plaintiff's decedent to take her own life, the focus should be on what the complaint actually set forth, rather than what defendant knew); *Foster*, 986 F.2d at 53 (citing and approving *Rowe* ). The analysis is confounded, however, by Pennsylvania practice, under which it is unclear what functions as the initial pleading, since a plaintiff, via *praecipe*, may obtain issuance of a summons to be served in advance of a complaint.

Other cases have less definitively held that a statement of damages or similar communication qualified as a clock-starting "other paper" under the statute. *See Rahwar v. Nootz*, 863 F Supp. 191, 191-92 (D.N.J. 1994) (explaining that complaint in auto accident case did not reveal damages amount and defendant timely filed notice of removal within 30 days of receiving damages letter from plaintiff claiming $500,000 in damages); *Hall v. Delta Air Lines, Inc.*, 340 F. Supp. 2d 596, 598 (D.V.I. 2004).

10

Section 1446(b).") Thus the defendant may have at least a minimal duty to investigate, on peril of finding out too late that the deadline has run. The Third Circuit again has noted, but has not yet ruled on, the subjective-inquiry approach:

> This Court has yet to analyze, particularly in the context of an action brought under CAFA, whether a defendant has an independent duty to discover evidence that would establish removal jurisdiction that is not apparent from the face of a plaintiff's complaint.

*Judon*, 773 F.3d at 509 n.13.[13]

The subjective-inquiry rule has some commonsense arguments in its favor. By New Jersey court rule, *no* state-court complaint for unliquidated damages will allege a dollar amount of damages sought. But consider a case in which the plaintiff sued based on the loss of a limb; could the defendant really say that it "first" learned the damages were potentially in excess of $75,000

---

[13] Cases in this district that appear to endorse or follow the subjective-inquiry approach include the following: *Peters v. Stop & Shop*, No. 13-6085 (JAP), 2013 U.S. Dist. LEXIS 153823, at *11 (D.N.J. Oct. 26, 2013) (In the context of a personal injury suit between diverse parties, "courts have held that allegations of severe injuries along with pain and suffering will alert the defendant that an amount in excess of the jurisdictional amount is at issue and trigger the running of the thirty-day period"); *Wishnia v. Whole Foods Mkt., Inc.*, No. 19-6483 (SRC), 2019 U.S. Dist. LEXIS 40046, at *9 (D.N.J. Mar. 12, 2019) (citing *Carroll* and concluding that defendant in slip-and-fall case had notice that damages exceeded $75,000 where complaint "sets forth express information regarding the nature of, severity and extent of the physical injuries"); *Romano v. Wal-Mart Stores E., LP*, No. 16-7420 (RBK/AMD), 2017 U.S. Dist. LEXIS 4448, at *4 (D.N.J. Jan. 11, 2017) ("[C]ourts in this District are increasingly applying the [subjective-inquiry approach] and finding that a complaint supports removal where it claims damages for injuries that are reasonably valued to meet the amount in controversy threshold," without discussing effect of 28 U.S.C. § 1446(b)(3)); *Ortiz v. Richmond Elevator Co.*, No. 15-cv-672 (CCC-JBC), 2015 U.S. Dist. LEXIS 131740, at *6 (D.N.J. Sep. 28, 2015) (citing *Carroll* and finding that nature of personal injuries from malfunctioning elevator put the defendant on notice that amount in controversy exceeded $75,000).

*Aviles v. Tilson*, No. CV 18-1940-BRM-DEA, 2018 WL 4489681, at *2 (D.N.J. Sept. 19, 2018), seems to have drawn on both approaches. First, citing *Carroll*, the court considered whether the defendant could infer the amount in controversy from a silent complaint, and second, citing *Vartanian*, it looked to the subsequent Rule 4:42-5 statement of damages to set the deadline running.

11

when it later received a formal statement of damages? If an explicit dollar-amount allegation were required to start the removal deadline running, then defendants might be tempted to lay back, see how things are going in state court, and, at their option, trigger the removal period by seeking a statement of the amount of damages sought.

The reader will recognize the familiar tradeoff between rules and standards. Each has well-known advantages and disadvantages in terms of predictability vs. flexibility. The weight of appellate authority, however, seems to be heavily on the side of the bright-line approach. The issue, moreover, is one of procedure, and deadlines should be amenable to application without the need for cumbersome collateral fact-finding. The bright-line approach serves efficiency by avoiding an inquiry into what the defendant knew or should have known about the plaintiff's case at some point in time. It permits all parties to ascertain with some precision when the 30-day deadline begins to run, and structure their litigation conduct accordingly.

The bright-line rule also better reflects the reality that it is *plaintiff's* case that the *defendant* is trying to guess the value of. The plaintiff knows very well whether it is claiming more than $75,000, but it has no incentive to clarify its position too early; to enjoy the protection of the removal deadline, the plaintiff need only get past the 30-day period. Requiring a clear written statement from the plaintiff puts the onus on the party which possesses the relevant information. Either way, however, the parties will get their day in court; at stake is not a substantive right, but the allocation of a state-law case to state or federal court. And it must be remembered that a defendant who has a good-faith belief that jurisdiction exists always has the *option* to file a notice of removal within 30 days of service of the complaint, and have its contentions tested. *See* 28 U.S.C. § 1332(c)(2)(A)(ii); p. 8 & n. 10, *supra*.[14]

---

[14] This, then, may be one of those procedural questions as to which, to quote Justice Brandeis out of context, "it is more important that the applicable rule of law be settled than that it be settled right." *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S. Ct. 443, 447 (1932) (Brandeis, J., dissenting).

Like a majority of the Circuits, I am persuaded by the *Vartanian* approach: the "bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper and, with respect to the jurisdictional amount in particular, requires a specific, unequivocal statement from the plaintiff regarding the damages sought." *Judon, supra* (citing Court of Appeals case law and stating but not explicitly adopting the majority rule). Like *Judon*, however, I need not squarely hold that the bright-line approach is the only correct one, because under either approach, as I interpret them, the notice of remand would be timely.

First, the bright-line approach. The Complaint here is not a "specific, unequivocal statement of the damages sought" that would set the 30-day deadline running. It omits all dollar amounts, and merely states that damages are sought in the following categories: (1) compensatory damages, (2) punitive damages, (3) front and back pay, (4) equitable reinstatement, and (5) attorneys' fees. The first pleading or other document that so much as mentioned a dollar figure was the Statement of Damages. Under the bright-line rule, that Statement was the first "document that clearly state[d] the amount in controversy [was] more than $75,000." *Worldwide Exec. Job Search Sols.*, 2017 WL 5762392 at *2 (citing *Vartanian*, 960 F. Supp. at 61-62). It placed the defendant on notice of an amount in controversy in excess of $75,000 as of January 7, 2019. Under the bright-line approach, the 30-day deadline under § 1446(b) therefore began running on that date. And the second Notice of Removal, on diversity grounds, was filed within 30 days of that date, on January 25, 2019.[15]

I turn to the subjective-inquiry approach. Under that approach, a complaint may sufficiently establish the jurisdictional amount without actually

---

[15] I consider *arguendo* whether the bright-line rule may or should be set aside if abused. Without taking a general position, I conclude that, at least in this case, it should not. To begin with, there is no doubt that the court possesses diversity jurisdiction. The defendant did not adopt the most efficient strategy, but it made no misstatements to the court, and there is no indication that it acted in bad faith.

13

stating a dollar figure.[16] Judges in this district have so held, but only in far clearer cases. *Carroll* itself cited cases in which the complaint alleged serious injuries, disfigurement, loss of a bodily function, and the like. 7 F. Supp. 2d at 521–22.[17] The subjective-inquiry cases cited at n. 13, *supra*, likewise involved factual allegations of severe physical injury.

Mr. Riconda's case does not approach that threshold. This is not a personal injury case, but one of allegedly wrongful firing. From the face of the complaint, lost-wages damages are not self-evidently or even inferably in excess of $75,000. (Later information indeed confirms that they do not approach $75,000.) They might have been supplemented by unspecified emotional damages, punitive damages, or attorney's fees. Even under the subjective-inquiry approach, however, this complaint did not place the defendant on clear enough notice of a claim that exceeded $75,000.

Whether under the bright-line or subjective-inquiry approach, I do not think that a complaint's boilerplate demands for punitive damages or attorney's fees meets the standard of notice. To be sure, a plaintiff seeking to invoke diversity jurisdiction might rely on them (and would be in a position to explain itself); likewise, a defendant might see them and opt to file a notice of removal (and could attempt to prove its jurisdictional allegations, with the aid of discovery if necessary). Nevertheless, such generic *ad damnum* demands do not sufficiently place a defendant on notice that jurisdiction is present and its entitlement to remove is in jeopardy of expiring. Moreover, the case law requires that, to count toward the jurisdictional amount, such demands must be "non-frivolous"—requiring at least that punitive damages or attorney's fees

---

[16] Indeed, it is possible that a sufficiently clear complaint might do so even under the bright-line approach. *See Worldwide Exec. Job Search Sols.*, 2017 WL 5762392 at *2 ("if a Complaint does not plead specific damages, *and does not otherwise make clear that the amount in controversy exceeds $75,000*, the 30-day clock for removal does not begin to run . . . .") (emphasis added). But surely the standard of clarity would have to be at least as high as the one under the subjective-inquiry approach.

[17] *Carroll* also noted that the complaint alleged willful misconduct, which would relieve the plaintiff of the $75,000 damages cap under the Warsaw Convention.

14

be recoverable as a matter of state law. See n.8, *supra* (citing *Golden, supra; Suber, supra; Zanger, supra*). The running of the deadline, then, would depend on the correctness of the defendant's legal analysis of the availability, or not, of punitive damages or attorney's fees for each of the state-law causes of action. That approach would undermine the predictability of what, under either approach, should be a workable procedural rule.

\* \* \*

There is a better way. That the parties were of diverse citizenship should have been apparent from the start. If the defendant had a good-faith basis to do so, it could have alleged diversity jurisdiction in its first notice of removal. Alternatively, the amount in controversy could have been ascertained by the early service of a demand for a statement of damages under N.J. Ct. R. 4:5-2, which the plaintiff would have been obliged to answer within five days. The initial 30-day deadline, then, could have been met, and this defendant could have filed a timely notice of removal based on both federal-question and diversity jurisdiction. Instead, the defendant took a too-clever-by-half approach; it removed the case based on the presence of a federal FMLA claim, but immediately moved to dismiss it. When, with plaintiff's consent, I did dismiss that insubstantial federal claim, there remained no sufficient basis to retain the state claims. Lacking any allegations of diversity jurisdiction, I declined supplemental jurisdiction and remanded the case. Once back in state court, however, the defendant seems to have acted with reasonable dispatch and obtained a Statement of Damages on January 7, 2019. But procedurally we are now just where, with a little more care, we could have been last July.

## CONCLUSION

For the reasons stated above, the second Notice of Removal was filed timely. There being no other dispute as to the court's diversity jurisdiction, the plaintiff's motion to remand the action to the Superior Court of New Jersey, Middlesex County, is denied. An Order will be entered in accordance with this Opinion.

Dated: May 2, 2019

*/s/ Kevin McNulty*
**Hon. Kevin McNulty**
**United States District Judge**